James F. McKITTRICK, Appellee,

v.

John W. GARDNER, Secretary of the Department of Health, Education and Welfare, Appellant.

Maggie L. CROUCH, Appellee,

v.

John W. GARDNER, Secretary of the Department of Health, Education and Welfare, Appellant.

Nos. 11192, 11214.

United States Court of Appeals
Fourth Circuit.

Argued April 5, 1967.

Decided May 30, 1967.

Morton Hollander, Atty., Department of Justice (Kathryn H. Baldwin, Jack H. Weiner and William Kanter, Attys., Dept. of Justice, on motion) for appellant.

W. H. Nicholson, Jr., Greenwood, S. C., for appellee McKittrick.

Kenneth L. Holland, Camden, S. C., for appellee Crouch.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and WINTER, Circuit Judges.

HAYNSWORTH, Chief Judge:

In each of these cases, the Secretary objects to a routine allowance of attorney fees to lawyers representing claimants to social security benefits. In each instance the claimant prevailed in the District Court, and the Secretary does not question the lawyers' entitlement to reasonable fees. He complains only of the controlling significance given to contingent fee contracts in fixing the fees.

In the Crouch case, the District Court on November 18, 1966, because of a contingent fee contract, approved a fee of $656.37, which was twenty-five per cent of the accrued benefits. The District Judge wrote an opinion in which he declared that fees would be routinely allowed in accordance with contingent fee contracts if the contractual fee did not exceed twenty-five per cent of the accrued benefits, the claimant approved the payment and there was no affirmative indication of overreaching or unfairness. Our opinions in Lambert v. Celebrezze, 4 Cir., 361 F.2d 677; and Redden v. Cele-

brezze, 4 Cir., 361 F.2d 815, were construed as requiring an exercise of the Court's independent judgment only when the contractual fee exceeds the statutory maximum of twenty-five per cent.

In the McKittrick case, the District Court routinely approved a fee equal to twenty-five per cent of the claimant's accrued benefits. Subsequently, on November 2, 1966, a supplemental fee was allowed equal to twenty-five per cent of the accrued benefits due dependents, making the total approved fee approximately $1,752.00. The District Judge had been informed of the existence of a contingent fee contract, but the supplemental order allowing the additional fee rests only upon findings that there were accrued benefits payable to dependents and that neither claimant nor his wife objected to the allowance of an additional fee equal to twenty-five per cent of those benefits. There was no explicit determination of the reasonableness of the fee.

Subsequent to the allowance of the fees in these two cases, we filed an opinion on rehearing of the Lambert and Redden cases. Redden v. Celebrezze, 4 Cir., 370 F.2d 373. There, we held that the maximum fee base included accrued benefits due dependents, but we also emphasized our reading of the statute [1] as requiring the court in every case to fix and determine a reasonable fee for services rendered in the court. We specifically stated, "Routine approval of the statutory maximum allowable fee should be avoided in all cases," [2] and this is true whether or not the fee claim has a contractual basis.

Our holding on rehearing in *Redden* requires a vacation of the fee orders in these cases.

As we attempted to point out in *Redden*, the statute requires the court to fix and allow a reasonable fee for services rendered in the judicial phase of the proceedings. It appears to contemplate no blind deference to contractual fee arrangements, and the congressional scheme, which places ultimate re-

---

1. 42 U.S.C.A. § 406(b).

2. 370 F.2d at 376.

sponsibility upon the court in every case, seems appropriate for a number of reasons.

The rate of accrual of benefits varies without any relation to the merits of the claim. It is fixed by such things as the claimant's prior earnings and the number of his dependents. The issue in the usual case is entitlement to benefits; their computation, is rarely in question. Unlike personal injury actions, therefore, the amount of the recovery bears no relation to the lawyer's skill, effort or effectiveness.

If, in these cases, a contingent fee contract governs the amount of the fee, the dilatory lawyer is given a premium; the prompt, effective lawyer who moves expeditiously is penalized. The regrettable delays in the final adjudication of these claims, in large measure, may be unavoidable, but they should not be compounded by incentives for procrastination and delaying tactics on the part of a claimant's attorney. The modest fees claimed here may be contrasted with those claimed in *Redden,* where the fee base exceeded $16,000. We attribute no responsibility to the lawyer in *Redden* for the delay which permitted the accrued benefits to reach that level, but it is obvious that in a similar case the size of the fee base would depend, to a substantial extent, upon the effectiveness of the lawyer's advancement of his client's cause with an inverse effect upon his fee. While most lawyers are conscientious, statutes need not encourage those who are not completely so to be less conscientious in the expeditious prosecution of the claims of their clients.

More importantly, the worth of the lawyer's services varies profoundly with his effort and its effectiveness. There are lawyers in this circuit, handling such claims, who file complaints in such general and summary form that a secretary could prepare them from office forms. The complaint is followed by a motion for summary judgment in a form appropriate for every case. Without the assistance of any brief or any exposition of the facts, the lawyer casts upon the court the burden of sifting the record and, unaided, of resolving any legal question which may be involved. Such lawyers, expending little or no effort as advocates of their clients' causes are atypical, but they do exist, and they do not deserve the same fee allowance as their more deserving brothers who conscientiously assist their clients and the courts.

It would be foolish to deny that the quantity and the quality of the services rendered by lawyers in such cases as these varies throughout a vast spectrum from very little to very great, and, after a favorable outcome, the least of them may be the quickest to declare to the client, "I won your case." Such a claimant is unlikely to object to an allowance of a fee in accordance with his contingent fee arrangement, for, rightly or wrongly, he will usually give the lawyer all of the credit for the success in winning an award of benefits for him. The Bar, as a whole, is a responsible, highly motivated group, but those whose performances depress its averages are not entitled to compensation on the same basis with equal reward as those whose performances elevate it.

Our decision here is governed by the statute, but such considerations as these lend support to the congressional purpose and our construction of it.[3] No one, of course, questions the appropriateness of congressional regulation of the fees payable in connection with an award of benefits under a comprehensive, statutory plan for the support of disabled persons.

The statute, as we construe it, imposes no great burden upon the courts. In the ordinary case, no evidentiary hearing is required. The district judge will know what assistance he received from the claimant's attorney. If, with little or no assistance, he is required to

---

**3.** As indicated earlier, other considerations would be involved in an appraisal of the propriety and usefulness of contingent fee arrangements in personal injury and other tort actions. If such contracts should come under judicial scrutiny, the problem will probably be posed in terms of the reasonableness of the particular contract.

read the entire administrative record, discover the issues and do the basic research in his library before he approaches performance cf his ultimate decision-making role, he will know it. He will know it if, in our adversary system, the lawyers have performed superbly or adequately, their function of eliminating irrelevancies, pointing up the issues to be decided and supplying the court with the legislative and judicial materials which he must have at hand when he reaches his ultimate conclusion. He will know, too, the worth of their analyses of the relevant materials, for he will have appraised them in depth in coming to his own decision. If the lawyer's performance has been somewhere in between the excellent and the wholly unacceptable, the judge will know it in all of its gradients. The judge who has decided a case, need hold no evidentiary hearing to determine the extent and quality of the assistance he received from the lawyers in reaching his conclusion and in preparing an opinion.

The judge may be assisted by a statement of the time spent by the lawyer, though such statements must be subordinate to the judge's evaluation of the lawyer's contribution to the decision. The evidence of a lawyer's fidelity and commitment to his client's cause, which is reflected in his performance in court, may be colored by reports or evidence of extra-legal financial and consultative services rendered by the lawyer to a claimant experiencing difficult, even insolvable, problems while awaiting receipt of the benefits he seeks. In short, the judge may receive supplemental reports and statements from the lawyer in aid of his fee claim, provided copies have been furnished the Secretary, but the controlling criterion will remain the quantity and quality of the lawyer's services as observed by the judge in the judicial proceedings.

Under these circumstances, an evidentiary hearing as a prerequisite to an order approving or allowing a fee should be rarely, if ever, necessary. There may be extraordinary cases in which the lawyer's claim may depend in part upon factual assertions which are questioned by the Secretary, but in the vast majority of cases, the judge's own observation of the lawyer's performance in the adjudicatory process will be a sufficient basis for his allowance of a reasonable fee.[4]

█ While the judge must approve the reasonableness of the fee in every case and may not unquestioningly endorse contingent fee contracts providing for a fee of not more than twenty-five per cent of the accrued benefits, there is no prohibition against his consideration of the contingency of compensation. Availability of lawyers to such claimants is of the highest importance, and if a lawyer is to receive no compensation unless there is an award, his compensation is contingent whether or not he has a contract that says so. Most of the disability claimants have no other resources for the payment of fees. The contingency of compensation, whether it stems from an employment contract or results from the claimant's indigency, is highly relevant in the appraisal of the reasonableness of any fee claim. The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services. Charges on the basis of a minimal hourly rate are surely inappropriate for a lawyer who has performed creditably when payment of any fee is so uncertain.

█ In each case, therefore, the statute requires the court to fix and determine a reasonable fee. It may approve a fee in accordance with a contingent fee contract within the statutory maximum, if it finds, under all of the circumstances, that the fee is reasonable, and in its

4. The Secretary, of course, should be afforded an opportunity to be heard. He will have seen the pleadings and the briefs of the claimant's attorney and ob- served his performance. His comparative appraisal, with the benefit of his very broad experience, should be of assistance to the court.

consideration of reasonableness it may consider all relevant facts and materials, including the contingency of compensation. We suggest no limitations upon the court's exercise of its discretion. We hold only that its discretion must be exercised in each case, without automatic or unquestioning acceptance of contractual arrangements.

It may be unfortunate that § 206(b) of the Act[5] appears to limit the court's allowance of a fee to the reasonable value of the lawyer's services in the court without regard to any services he may have rendered in the unsuccessful administrative proceeding.[6] In the usual case, when the District Judge has gone through the administrative record, he will have become familiar with the extent and the nature of the services rendered by the lawyer in the administrative phase of the case. At an appropriate time, the Congress might consider whether or not it is an unnecessary burden upon the lawyer to require him to prosecute two separate fee allowance applications, if one in the District Court would suffice. Meanwhile, as Chief Judge Aldrich observed in *Menendez*, "[t]here is nothing singular in the fact that counsel who appears in two forums should apply to each for the aliquot part of his total fee * * *."[7] Counsel for the Secretary assures us that the Secretary will allow a reasonable fee for services in the administrative proceedings if, though the Secretary's decision was adverse to the claimant, the claimant subsequently obtains an award as a result of the judgment of a court.

In vacating the judgments of the District Court because of the controlling significance attributed to the contingent fee contracts, and remanding these cases for further proceedings not inconsistent with this opinion, we intimate no opinion that the fees actually allowed in these cases are unreasonable.

Vacated and remanded.

5. 42 U.S.C.A. § 406(b).

6. Gardner v. Menendez, 1 Cir., 373 F.2d 488; Robinson v. Gardner, 4 Cir., 374 F. 2d 949.

7. Menendez, 1 Cir., 373 F.2d 488, 490.