**Dale WELLS, William Hlywa, Plaintiffs–Appellants,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee,**

**Appeal of John S. HOGG.**

**Nos. 1034, 1035, Dockets 89–6244, 89–6246.**

United States Court of Appeals, Second Circuit.

Argued March 19, 1990.

Decided June 29, 1990.

John S. Hogg, Hamilton, N.Y., for appellant Hogg and plaintiffs-appellants Wells and Hlywa.

Arthur Swerdloff, Asst. Regional Counsel, Region II. Office of the Gen. Counsel, U.S. Dept. of Health and Human Services, New York City (Michael J. Astrue, Gen. Counsel, Annette H. Blum, Chief Counsel, Region II, Frederick J. Scullin, Jr., U.S. Atty., N.D.N.Y., of counsel), for defendant-appellee Louis W. Sullivan, M.D.

Before NEWMAN and PRATT, Circuit Judges, and MUKASEY, District Judge for the Southern District of New York, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

For the second time these two social security cases are on appeal on issues of attorney's fees. In the first appeal, *Wells v. Bowen*, 855 F.2d 37 (2d Cir.1988) (*Wells I*), we held that an attorney may apply for and be awarded fees under both the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), and the Social Security Act (SSA), 42 U.S.C. § 406(b), and we remanded for a determination of a reasonable fee under § 406(b). Now, John S. Hogg, plaintiffs' attorney, appeals from a further order of the United States District Court for the Northern District of New York, Howard G. Munson, *Chief Judge*, that fixed the amounts of attorney's fees to be allowed. Hogg claims that the awards were unreasonable because they were based on lodestar calculations made by the district court in derogation of contingent fee arrangements with his clients.

In *Wells I*, decided before the Supreme Court's recent opinion in *Venegas v. Mitchell*, —— U.S. ——, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990), we mentioned in passing that we did not "believe that the contingency percentage embodied in any given attorney-client contract should be treated by the court as presumptively 'reasonable' for purposes of 42 U.S.C. § 406(b)." 855 F.2d at 45. In doing so, however, we did not examine in any detail the problems surrounding contingent fee agreements in relation to social security fee awards. Now, prompted by the Supreme Court's analysis in *Venegas*, and the well reasoned positions that the sixth and seventh circuits have adopted, *see McGuire v. Sullivan*, 873 F.2d 974 (7th Cir.1989); *Rodriguez v. Bowen*, 865 F.2d 739 (6th Cir.1989), we address the problem in greater detail.

## BACKGROUND

After attorney Hogg had litigated and won past due payments for Dale Wells and William Hlywa, who had been wrongly denied benefits by the Social Security Administration, he applied for attorney's fees under the EAJA and also under the SSA. Initially, the district court refused to award "dual fees" and granted attorney's fees only under the EAJA. On the earlier appeal, we held that awards under both statutes are permitted, provided the attorney retains only the larger award and remits the smaller to the claimant, and we remanded the cases for determination of the fees to be awarded under the SSA. *Wells I*, 855 F.2d at 48.

On remand, Hogg submitted requests for fees based on his contingent fee agreements with the claimants. He requested $4,725.00, 14% of the past due benefits won for Wells, and $7,244.75, 25% of the past due benefits won for Hlywa. Neither claimant objected to the fee requests. Nevertheless, the district court ignored the contingency agreements, and instead awarded fees according to its own determination based on lodestar calculations. It fixed Hogg's fee at $3,843.45 in Wells's case, and $5,756.40 in Hlywa's case. Hogg now appeals these fee awards on the grounds that the district court erred by ignoring the contingent fee arrangements, by incorrectly applying the lodestar method, and by setting an unreasonably low enhancement rate. Finding his arguments convincing on the first ground, we need not address the other two.

## DISCUSSION

SSA provides that a court may award an attorney who has represented a successful claimant in a social security case "a reasonable fee * * * not in excess of 25% of the total of the past due benefits to which the claimant is entitled." 42 U.S.C. § 406(b). Section 406(b) does not prohibit contingent fee agreements; at the same time, it gives no guidance as to how a court should treat them in determining a "reasonable fee". Until recently, case law also has provided us with little guidance on the subject. Now, however, relying on *Venegas*, on the insights provided by the sixth and seventh circuits, and on certain policy considerations, we feel we can define more fully how contingent fee arrangements in successful social security cases should be treated.

### A. Venegas v. Mitchell *and § 406(b)*

In *Venegas*, a prevailing civil rights plaintiff sought to prevent his former attorney from collecting a contingent fee in an amount substantially larger than the fee awarded for the case by the district court under 42 U.S.C. § 1988. —— U.S. ——, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990). Venegas argued that the § 1988 fee award, to be paid by the defendant, precluded his attorney from collecting a larger fee from him under their private contingency agreement.

The Court held, however, that § 1988 does not invalidate contingent fee agreements between successful civil rights plaintiffs and their attorneys. It examined the language, purpose, and intent of § 1988 and found that a civil rights plaintiff was entitled to enter into a contingent fee arrangement with his attorney even though § 1988 contemplated that the district court would award a reasonable fee, and even though the contingent fee exceeded the court's award. *Id.* at 1683.

In upholding the validity of the private agreement the Court placed great importance upon freely negotiated contracts and indicated that, absent fraud or overreaching, courts must enforce such private contingency fee agreements, which are, after all, embodiments of the intentions and wishes of the parties. *See id.* at 1683–84. Three points of the Court's analysis are significant.

First, although the language of § 1988 provides that a "court * * * may allow the prevailing party * * * a reasonable attorney's fee" to be paid by the defendant, the Court found that there was nothing "on its face [to] prevent the plaintiff from promising an attorney a percentage" of the judgment. *Id.* at 1682.

Second, the purpose of § 1988 fees is to "enable civil rights plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail." *Id.* Depriving plaintiffs of the option of entering contingent fee agreements "would not further § 1988's general purpose of enabling such plaintiffs * * * to secure competent counsel" or counsel of their choice in vindicating important constitutional rights. *Id.* at 1684.

Finally, according to the Court, the legislative history of § 1988 indicates that there was no intent to abrogate the freedom of a civil rights plaintiff to enter a fee contract. Attorney's fees are awarded to a prevailing plaintiff under § 1988 as part of the costs of the action, and this is done even though the plaintiff may have had the financial resources to pay an attorney. "We have [always] therefore accepted, at least implic-

itly, that statutory awards of fees can coexist with private fee arrangements." *Id.* at 1683. Further, the Court pointed out, because it is the plaintiff's right to settle, waive, or negotiate the underlying civil rights cause of action with his opponent, it would be inconsistent to find that a plaintiff cannot do the same with his lawyer in regard to fees. Otherwise, plaintiffs would be placed "in the peculiar position of being more free to negotiate with their adversaries than with their own attorneys." *Id.*

In sum, according to the Court, contingent fee arrangements are not prohibited by § 1988 but coexist with it and further its purpose of ensuring adequate representation for civil rights plaintiffs. *See id.* at 1684.

 This analysis applies equally well to § 406(b), and, we believe, justifies a similar result. First, we consider the language of the statute. Section 406(b) is not, of course, a fee-shifting statute, as is § 1988. It is directed not at the fee to be paid by the defendant to the plaintiff, but at the fee to be paid by the plaintiff to his own attorney, and the section permits the court to determine the amount of "a reasonable fee for * * * representation", provided the amount does not exceed 25% of the past due benefits. 42 U.S.C. § 406(b)(1). Just as with § 1988, however, nothing on the face of this statute prevents the plaintiff from promising the attorney a percentage.

Second, the purpose of § 1988 in civil rights cases—to enable plaintiffs to obtain competent representation by ensuring adequate compensation to their attorneys—is implicitly recognized as a valid factor in social security cases; § 406(b) seeks only to regulate the contingent fees favorably to the plaintiff by limiting the contingency to 25%, and favorably to the attorney by permitting payment directly from the government out of the plaintiff's award. *See* Sen.Rep. No. 404, 1965 U.S.Code Cong. & Ad.News, 1943, 2062. Neither the statute itself nor its legislative history displays any intent to invalidate all contingent fee arrangements. On the contrary, congress intended only to limit such agreements to a maximum of 25%. Further, to deny social security claimants the option of entering

contingent fee arrangements would tend to defeat the general remedial purpose of the statute by unnecessarily restricting claimants' options in securing adequate counsel or counsel of their choice. Thus, just as a civil rights plaintiff may, without offending the purpose of § 1988, contract to pay his attorney more than the amount of the fee shifted to the defendant, so a social security plaintiff may normally contract up to the maximum allowed by statute, without offending § 406(b).

Finally, the Court's concern for a client's freedom to contract with his own attorney in the § 1988 context carries corresponding weight in social security cases. As in § 1988 situations, the underlying social security claim in § 406(b) cases belongs to the claimant, who is free to waive or assert it; yet, unless he is able to enter a contingent fee agreement, he would not be free to negotiate a fee with his attorney within the statutory limit. Thus, as the Court held under § 1988, it would be inconsistent to allow claimants more power to determine their dealings with their adversary, the Social Security Administration, than they have with their own attorneys.

We conclude, therefore, that § 406(b) does not invalidate all contingent fee arrangements—it merely sets their upper limit—and because such arrangements effectuate congress's objective of securing adequate representation for social security claimants, a requested fee based on a contingent fee arrangement should be enforced unless the court finds it to be unreasonable.

### B. *Lessons from Other Circuits*

We can benefit from the wisdom of the sixth and seventh circuits which have extensively analyzed the problem of contingent fees in social security cases. *See McGuire v. Sullivan,* 873 F.2d 974 (7th Cir.1989); *Rodriguez v. Bowen,* 865 F.2d 739 (6th Cir.1989); *In re Horenstein,* 810 F.2d 73 (6th Cir.1986); *McKittrick v. Gardner,* 378 F.2d 872 (7th Cir.1967). From their discussions, a few important principles can be discerned.

 First, enhancements for the risk of nonpayment are appropriate considerations

in determining § 406(b) fees. *See, e.g., McKittrick*, 378 F.2d at 875 (contingency enhancement is of highest importance under § 406(b) in availability of adequate representation). In the absence of a fixed-fee agreement, payment for an attorney in a social security case is inevitably uncertain, and any reasonable fee award must take account of that risk. Indeed, we, too, have recognized that contingency risks are "necessary factors" in determining reasonable fees under § 406(b). *Wells I,* 855 F.2d at 45.

■ Second, the traditional lodestar method, borrowed from fee-shifting contexts, is not appropriate for evaluating a reasonable fee to be paid by the client in a social security case where there is a contingent fee agreement. *See McGuire,* 873 F.2d at 980; *Rodriguez,* 865 F.2d at 743–44. In fee-shifting cases, courts must carefully scrutinize the awards to ensure they are reasonable not only to the plaintiff who benefits, but also to the defendant who must pay the fee. Thus, in determining a "reasonable fee" to be shifted to the defendant, courts have looked to the lodestar method, which necessarily emphasizes the calculation of a reasonable rate of compensation for the number of hours reasonably worked. *See Wells I,* 855 F.2d at 43; *see also, Blum v. Stenson,* 465 U.S. 886, 898, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); *McGuire,* 873 F.2d at 980.

However, since there is no shifting of fees under § 406(b), courts need not be Solomon-like arbiters of "reasonableness" between the opposing interests of prevailing plaintiffs and losing defendants. *See McGuire,* 873 F.2d at 979. Rather, because a successful social security claimant evaluates and pays his own attorney, a court's primary focus should be on the reasonableness of the contingency agreement in the context of the particular case; and the best indicator of the "reasonableness" of a contingency fee in a social security case is the contingency percentage actually negotiated between the attorney and client, not an hourly rate determined under lodestar calculations.

■ Third, because § 406(b) requires the district court to review the reasonableness of any requested fee, contingent fee agreements cannot simply be adopted as *per se* reasonable in all social security cases. *Wells I,* 855 F.2d at 45–46; *see McGuire,* 873 F.2d at 979. We must recognize, however, that a contingency agreement is the freely negotiated expression both of a claimant's willingness to pay more than a particular hourly rate to secure effective representation, and of an attorney's willingness to take the case despite the risk of nonpayment. *See Rodriguez,* 865 F.2d at 746; *Wells I,* 855 F.2d at 45. Therefore, we ought normally to give the same deference to these agreements as we would to any contract embodying the intent of the parties. *See McGuire,* 873 F.2d at 981; *Rodriguez,* 865 F.2d at 746.

Based on these principles, we hold that where there is a contingency fee agreement in a successful social security case, the district court's determination of a reasonable fee under § 406(b) must begin with the agreement, and the district court may reduce the amount called for by the contingency agreement only when it finds the amount to be unreasonable. *McGuire,* 873 F.2d at 981; *see Rodriguez,* 865 F.2d at 746.

### C. *Policy Considerations*

This approach will assist social security claimants to obtain effective representation. Many claimants are indigent or are on low or fixed incomes and cannot afford to retain counsel at fixed hourly rates, *see McKittrick,* 378 F.2d at 875 ("Most of the disability claimants have no other resources for the payment of fees."), yet they are willing to pay a portion of any recovery they may receive in return for successful representation. Ignoring reasonable contingent fee agreements or automatically reducing them would impair claimants' ability to secure representation. *See McGuire,* 873 F.2d at 980.

Moreover, many attorneys are unwilling to accept the risk of nonpayment without a guaranteed contingency percentage of the recovery. *See id.* at 980; *Wells I,* 855 F.2d at 45; *Coup v. Heckler,* 834 F.2d 313, 325 (3d Cir.1987) ("Undue rigidity in limiting attorneys in contingent fee situations to hourly rates * * * may have that unfortu-

nate consequence."). Thus, accepting reasonable contingency agreements as the basis for a § 406(b) social security fee provides a critical incentive for able attorneys to practice in the social security field and increases the likelihood that a claimant can find an attorney sufficiently committed and skilled to litigate successfully against the government. *See McGuire,* 873 F.2d at 980.

This approach also relieves the courts, which "are sometimes spending almost as much time reviewing and setting fees as they are in dealing with the merits of the benefits determination." *Rodriguez,* 865 F.2d at 746; *see also Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983) ("A request for attorney's fees should not result in a second major litigation."). In each case where the contingent fee is found to be reasonable, based on a general assessment of the fee in relation to the nature of the litigation, the need for complicated lodestar calculations, expert evidence, and protracted litigation vanishes.

■ Finally, accepting reasonable contingency agreements substantially reduces the anomalous role of the Social Security Administration in first denying benefits to a claimant, and then after losing the case, posing as a protector of the plaintiff, but spending more time and money in order to reduce the fees to be paid to the claimant's attorney. The Social Security Administration may make fee recommendations, but it is prevented from routinely opposing requested fees based on contingency agreements. *See Wells I,* 855 F.2d at 47.

D. *Reasonable Contingency Agreements and Hogg's Fees*

When a contingent fee has been agreed to by the parties, the district court must determine whether the fee is reasonable. It must give due deference to the intent of the parties, but it ought not blindly approve every fee request made pursuant to a contingent agreement. While the court need not make mathematical calculations, it should, of course, determine whether the contingency percentage is within the 25% cap; it should also consider whether there has been fraud or overreaching in making the agreement, and whether the requested amount is so large as to be a windfall to the attorney. *See McGuire,* 873 F.2d at 981; *Rodriguez,* 865 F.2d at 746; *see also Wells I,* 855 F.2d at 43–44. Should the district court find that the agreement provides an unreasonable fee under the circumstances, the court may reduce the fee provided it states the reasons for and the amounts of the deductions. *See Wells I,* 855 F.2d at 43.

In this case, based on the contingent fee arrangements with his clients, Hogg requested the maximum fee of 25% of the total past due benefits won for Hlywa, and a fee of 14% of the past due benefits won for Wells. The district court did not determine that the contingent fees were unreasonable, yet it awarded amounts less than those agreed to. We now reverse the awards and remand these cases to the district court for an appropriate determination of the reasonableness of the fees giving proper deference to the agreements of the parties.

Reversed and remanded.