**Willie A. FRAZIER, Plaintiff,**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant.**

Civ. A. No. 83–T–169–N.

United States District Court,
M.D. Alabama, N.D.

June 12, 1991.

Charles Tyler Clark, R. Michael Booker, Birmingham, Ala., for plaintiff.

John C. Bell, U.S. Atty., Calvin C. Pryor, Montgomery, Ala., for defendant.

## ORDER

MYRON H. THOMPSON, Chief Judge.

In November 1990, this court reversed a decision by defendant Secretary of Health and Human Services denying plaintiff Wil-

lie A. Frazier's application for disability insurance payments and supplemental security income under the Social Security Act, 42 U.S.C.A. § 301 *et seq.*, and remanded the case to the Secretary for an award of benefits. The cause is now before the court on a petition by Frazier's counsel, R. Michael Booker, for attorney's fees in the amount of $16,792.92, to be paid from the $68,523.12 in past-due benefits to which the Secretary has calculated Frazier is now entitled. For the reasons that follow, the court concludes that Frazier's counsel should receive a fee of $8,400.00.

I.

Frazier's quest for social security benefits has a long and tangled history. He initially sought benefits in 1981, but his application was denied by the Secretary in September 1982. Accordingly, Frazier filed this action in March 1983, and in March 1984 the court remanded the case to the Secretary for further proceedings in light of *Broz v. Heckler*, 711 F.2d 957 (11th Cir.1983), which required individualized consideration of a claimant's age.[1] In September 1984, the Secretary ruled that Frazier was not entitled to benefits, and again in November 1985 the court remanded the case to the Secretary, this time for consideration of a new mental impairment regulation.[2] After the Secretary's Appeals Council overturned a subsequent hearing decision denying benefits and remanded Frazier's case for a new hearing, an administrative law judge (ALJ)—the fourth to hear

his claim—again rejected Frazier's application and a motion was brought in this court in October 1988 to reopen the lawsuit. The court's November 1990 order directing the Secretary to award Frazier benefits grew out of this final series of judicial proceedings. Specifically, the court rejected the most recent ALJ's finding that Frazier's mentally retarded range I.Q. scores were not valid.[3]

In June 1983, Frazier retained attorney Booker to represent him in seeking social security benefits, and in March 1984 signed a written fee agreement promising to pay Booker 25% of all past-due benefits received by himself and his family.[4] When the Secretary awarded Frazier $68,523.12, pursuant to the court's November 1990 order, he withheld, as the Secretary does in all cases, 25% of this figure, amounting to $16,792.92;[5] Therefore, Frazier received a check for $51,730.28.[6] Relying on the contingency agreement and on the Social Security Act, Booker now seeks to collect these set-aside funds as his attorney's fee.[7] Frazier does not object to Booker's request for a fee of $16,792.92 to be paid from his past-due benefits. Nevertheless, the Secretary challenges the amount of Booker's fee request, arguing that he should receive a reasonable hourly rate or "lodestar" fee rather than 25% of Frazier's recovery, and that he should be compensated only for time spent on litigation, rather than also for hours devoted to administrative proceedings.[8] Booker's itemized documenta-

---

1. *See* Order entered March 6, 1984 (Varner, J.).

2. *See* Order entered November 18, 1985 (Varner, J.).

3. *See* Order entered November 7, 1990 (Thompson, J.).

4. The attorney who filed the complaint later referred the case to Booker.

5. The Secretary routinely withholds 25% of retroactive benefit awards, *see Straw v. Bowen*, 866 F.2d 1167, 1168 (9th Cir.1989), because this represents the statutory maximum that an attorney can collect from his client in a social security case. *See* 42 U.S.C.A. § 406(b)(1) (discussed in detail in section II(A) of the court's order). *See also Bowen v. Galbreath*, 485 U.S. 74, 76, 108 S.Ct. 892, 894, 99 L.Ed.2d 68 (1988). If the

attorney ultimately receives a fee amounting to less than 25%, the remainder of the withheld funds are eventually paid to the client.

6. According to the court's calculations, the money withheld, $16,792.92, is actually 24.5% of the total figure, $68,523.20.

7. Frazier's dependents were independently awarded a total of $22,216.20 in retroactive benefits as an indirect result of the court's order finding Frazier to be disabled, out of which $7,405.40 was withheld as a potential attorney's fee for Booker. However, Booker does not request a fee from any of these funds.

8. The lodestar approach to fixing fees multiplies the number of hours reasonably expended by an attorney on the litigation by a reasonable hourly

tion reveals that he has expended 28 hours on litigating Frazier's case in this court, 28.5 hours on administrative proceedings before the Secretary, and 1.5 hours on his fee petition.[9]

## II.

### A.

In the Social Security Act, Congress provided that an attorney representing a claimant in a successful retroactive benefits lawsuit is entitled to "a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits" recovered. 42 U.S.C.A. § 406(b)(1).[10] While it is clear that the statute intended for fees to be awarded "out of and not in addition to the past-due benefits recoverd by a successful claimant," *Watford v. Heckler*, 765 F.2d 1562, 1566 (11th Cir. 1985), Congress offered no guidance to the courts regarding the method to be used in determining what fee is reasonable in a given case. Although constrained by the 25% ceiling, contingent fee agreements are not forbidden by the Act; however, the weight to be accorded such arrangements is left unspecified. Here, Frazier's counsel suggests that contingent fee contracts within the statutory limit should be afforded presumptive reasonableness. The Secretary, on the other hand, argues that the contingency agreement should be considered only as one factor among many in arriving at a reasonable hourly rate.[11]

The proper framework for determining the reasonableness of a fee or the appropriate degree of deference to a contingent fee contract under § 406(b)(1) are not only issues of first impression in this circuit, but also ones as to which a number of the other courts of appeals are sharply divided.[12] This split mirrors the arguments advanced by opposing counsel: some courts have held that a district judge confronted with a fee petition under § 406(b)(1) should not engage intitally in an hourly rate analysis where the attorney and client have contracted as to an appropriate fee within the 25% ceiling, but rather should begin with a presumption in favor of the contingent figure and should reduce this amount only where and to the degree the figure is clearly excessive or the agreement is otherwise unreasonable—for example, in cases in which the attorney has engaged in purposeful delay or similarly improper conduct, or the client did not knowingly and voluntarily enter into the agreement. *See Wells v. Sullivan*, 907 F.2d 367, 371 (2nd Cir.1990); *McGuire v. Sullivan*, 873 F.2d 974, 980–81 (7th Cir. 1989); *Rodriguez v. Bowen*, 865 F.2d 739, 746–47 (6th Cir.1989) (en banc). However, other circuits have adopted a lodestar approach to setting fees in such cases, incorporating the existence of a preexisting contingent fee agreement only as one of a number of criteria in determining a fair level of compensation for the claimant's attorney. *See Brown v. Sullivan*, 917 F.2d

---

rate, resulting in a base figure which is then adjusted upwards or downwards to take account of special or unusual factors. *See* section II(B) of the court's order.

**9.** Booker has already reached an agreement with the Secretary according to which he has received $2,000 in attorney's fees from the Secretary under the Equal Access to Justice Act. 28 U.S.C.A. § 2412(d). However, because he has given this money to Frazier, the award does not preclude him from seeking fees from Frazier under the Social Security Act. *Watford v. Heckler*, 765 F.2d 1562, 1566 n. 5 (11th Cir.1985).

**10.** "Past-due benefits" are not defined in the statute, but the Secretary's regulations provide:

'Past due benefits' means the total amount of benefits payable ... to all beneficiaries that has accumulated because of a favorable administrative or judicial determination or decision, up to but not including the month the determination or decision is made. 20 C.F.R. § 404.1703." *Shoemaker v. Bowen*, 853 F.2d 858, 860 n. 4 (11th Cir.1988).

**11.** Although the Secretary may technically lack standing to contest a fee request by a claimant's attorney under § 406(b), it is appropriate for the district court to solicit his recommendation as to such a request. *See Cotter v. Bowen*, 879 F.2d 359, 362 (8th Cir.1989); *Coup v. Heckler*, 834 F.2d 313, 325 (3rd Cir.1987).

**12.** Although the Eleventh Circuit's opinion in *Watford v. Heckler* discusses § 406(b) in passing, it does not confront these issues, but instead deals principally with whether the statute limits fee awards under the Equal Access to Justice Act.

189, 191–93 (5th Cir.1990); *Cotter v. Bowen*, 879 F.2d 359, 363 (8th Cir.1989); *Craig v. Sec'y, Dep't of Health and Human Services*, 864 F.2d 324, 327–28 (4th Cir.1989); *Starr v. Bowen*, 831 F.2d 872, 874 (9th Cir.1987). *See also Ramos Colon v. Sec'y of Health and Human Services*, 850 F.2d 24, 26 (1st Cir.1988); *Coup v. Heckler*, 834 F.2d 313, 324 (3rd Cir.1987). After weighing carefully the views advanced by these and other courts, as well as independently considering the relevant legislative history and the purposes underlying § 406(b), the court is persuaded that the latter approach, rather than the former, should be employed in setting fees under this provision of the Social Security Act.

As an initial matter, the lodestar method is more consistent with the language and structure of the statute than is an approach that presumes the reasonableness of private fee arrangements. First, § 406(b) authorizes district courts to "determine" rather than simply to approve attorney's fees, emphasizing the requirement that a lawyer representing social security claimant receive only a "reasonable" fee,[13] and including the 25% fee cap only in a subsequent, dependent clause.[14] Second, § 406(b) makes no mention whatsoever of contingent-fee contracts. Clearly, this was not an oversight, given that Congress explicitly referred to fee agreements between claimants and their attorneys in enacting and later amending Section 406(a), which governs the rights of attorneys to collect fees for representing social security claim-

ants in administrative proceedings before the Secretary. *See* 42 U.S.C.A. § 406(a) (West 1983 & Supp.1991). Third, strict reliance on contingent agreements—which, from the court's experience and its reading of reported decisions, appear almost always to adopt the maximum 25% figure allowed under the statute—would upset this statutorily authorized dual role the Secretary and the courts have in determining the fee to be paid to an attorney out of his client's benefits award. Section 406(b) gives courts the authority to award fees for only the time spent in connection with litigation in court, *see Brown v. Sullivan*, 917 F.2d 189, 191 & n. 5 (5th Cir.1990) (citing cases from six other circuits agreeing with this interpretation of § 406(b)); fees for work performed during administrative proceedings must be sought from the Secretary pursuant to § 406(a). However, because an attorney is entitled to collect only a total of 25% of his client's past-due benefits from the court, the Secretary, or both, *Dawson v. Finch*, 425 F.2d 1192, 1195 (5th Cir.1970), routine court approval of 25% contingent fees would normally preclude any further fee request directed to the Secretary. Such a result would run contrary to Congress's clear intention, in passing § 406(a), that the Secretary play a significant role in the area of attorney's fees in social security cases.[15] Indeed, it might well render § 406(a) a virtual dead letter for those retroactive benefit cases that result in litigation.

---

**13.** Although fee-shifting statutes such as 42 U.S.C.A. § 1988 differ from § 406(b) in that they impose fee liability on losing defendants rather than prevailing clients, many, like § 406(b), are governed by a "reasonableness" criterion. It is instructive that courts which have interpreted this standard in fixing fees have refused to rely on the contingent fee to which the prevailing party and his counsel have agreed. *See Blanchard v. Bergeron*, 489 U.S. 87, 91–92, 109 S.Ct. 939, 943, 103 L.Ed.2d 67 (1989), quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir.1974). *See also Brown v. Sullivan*, 917 F.2d at 192.

**14.** Under a lodestar approach, the 25% outer limit on fees can be viewed as serving the sensible purpose of preventing courts from dispensing fees which, although of an amount fair to the attorney, nevertheless disproportionately de-

plete the claimant's past-due benefits. Thus, where the lodestar method is employed, the 25% cap would likely only come into play in cases involving relatively small awards of past-due benefits.

**15.** It is also important to note that the procedures and standards governing awards of attorney's fees by the Secretary differ in several important respects from those applicable to a court's consideration of fee requests in social security litigation. *Compare* 42 U.S.C.A. § 406(a) *with* 42 U.S.C.A. § 406(b). Thus, allowing courts effectively to occupy this field through routine approval of 25% contingency fee agreements would also indirectly frustrate Congress's intention that fee requests directed to the Secretary be evaluated differently than ones presented to a court.

To the extent that the lodestar method will in some cases result in somewhat lower attorney's fees—and, conversely, larger benefits awards to successful claimants—than adherence to the terms of contingent fee contracts, this result is also consistent with Congress's underlying goal in passing § 406(b). The brief legislative history of this provision makes clear that its principal purpose was to control the charging of excessive fees by claimants' attorneys.[16] *See Dawson v. Finch,* 425 F.2d 1192, 1194–95 (5th Cir.), *cert. denied,* 400 U.S. 830, 91 S.Ct. 60, 27 L.Ed.2d 60 (1970); *McGuire v. Sullivan,* 873 F.2d at 980 n. 4; *Rodriguez v. Bowen,* 865 F.2d at 744. The Senate report specifically cited evidence of "inordinately large fees ... result[ing] from a contingent-fee arrangement under which the attorney is entitled to a percentage (frequently one-third to one-half) of the accrued benefits." S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted at* 1965 U.S. Code Cong. & Ad. News, 1943, 2062. The report went on to note that such agreements yielded particularly sizable fees in cases involving long delays, where the passage of time after a claimant's application is improperly denied swells the amount of past-due benefits owed to him. *Id.* In choosing to remove the "attorney-client contractual relationship" in the specific area of disability litigation from the general operation of the "marketplace for legal services," *Wells v. Bowen,* 855 F.2d 37, 42 (2nd Cir.1988), Congress also implicitly recognized the special difficulties that confront social security claimants. Most desperately need the minimal past-due benefits

they so long have gone without, *see Cotter v. Bowen,* 879 F.2d at 360, 365; *Rodriguez v. Bowen,* 865 F.2d at 745, and some—because of mental impairments, limited education, or the financial stress occasioned by the initial denial or cessation of their benefits—may enter into fee agreements with their attorneys without a complete understanding of the nature of the arrangements or their ability to negotiate the terms of such contracts. *See id.* at 748 (Wellford, J., concurring in part and dissenting in part).[17]

The court is persuaded that a legal standard that presumes the reasonableness of a contingency fee less than 25% in considering attorney petitions under § 406(b) cannot effectively respond to Congress's concerns in a predictable, consistent fashion. While foreswearing reliance on an hourly rate approach, none of the courts of appeals *that have adopted this presumption in favor of the figure agreed to by attorney and client* have succeeded in articulating another, workable criterion for determining when or to what degree a contractual fee should be reduced or rejected as substantively unreasonable, short of the tautology that lawyers should not receive a "windfall." *See Wells v. Sullivan,* 907 F.2d at 372; *McGuire v. Sullivan,* 873 F.2d at 981; *Rodriguez v. Bowen,* 865 F.2d at 746. Contrary to the suggestion of the Second Circuit in *Wells,* this court is of the opinion that an attorney who files for fees under § 406(b) in a circuit that utilizes traditional lodestar analysis, familiar to lawyers and judges, will be more able to predict his fee than will one who seeks compensation in a

---

**16.** A number of courts have suggested that § 406(b) was also intended to encourage effective legal representation by assuring attorneys that they would receive adequate compensation for handling social security cases. *See Wells v. Sullivan,* 907 F.2d at 370; *Rodriguez v. Bowen,* 865 F.2d at 744. While it is no doubt true that Congress's instruction that district court's set "reasonable" fees embodied the desire that fees be large enough to attract sufficient numbers of competent lawyers to such litigation, this statute was not a response to deflated legal fees in social security cases. Rather, § 406(b) specifically aimed to assist attorneys only by ensuring *that they would receive their fees directly through the court and the Secretary,* thus removing from them the burden of seeking pay-

ment for their services from the claimants they represent, to whom all benefits were paid directly prior to the enactment of this provision. *See Dawson v. Finch,* 425 F.2d at 1195; Hearings on H.R. 6675 Before the Senate Committee on Finance, 89th Congress, 1st Sess., pp. 512–13.

**17.** Although the court in no way suggests that Frazier's counsel may have taken advantage of him in obtaining his consent to a contingency fee contract, Frazier's mental retardation, recognized by the court in its opinion on the merits of this case, is a factor that would require the court to be especially careful in scrutinizing the fairness of the agreement.

circuit that has let it be known it will award him his contingency fee, but only as long as it does not afford him a "windfall." [18] It is true that to the extent that the "windfall" test adopted by the Second, Sixth, and Seventh Circuits would invalidate only those contractually arranged fees that are truly unconscionable, either because they are prohibitively excessive or were fraudulently negotiated, such a standard might well, in the vast majority cases, relieve the courts of the difficult burden of setting fees according to "complicated lodestar calculations." *Wells v. Sullivan,* 907 F.2d at 372. However, such a niggardly interpretation of § 406(b) would also effectively read the reasonableness requirement out of the statute; federal courts have traditionally been empowered, based on either equitable jurisdiction or inherent authority, to invalidate unconscionable contingency fees, even in garden variety, common-law civil litigation. *See, e.g., McKenzie Construction, Inc. v. Maynard,* 758 F.2d 97, 100–01 (3rd Cir.1985). For this reason, an unconscionability standard is inconsistent with Congress's intent that social security claimants be afforded special judicial protection from unreasonable fee arrangements.

■ Finally, the court also believes that reliance on a reasonable hourly rate is more equitable and establishes preferable incentives for attorneys who handle social security lawsuits than a presumption in favor of a contractual figure. Reliance on contingent fees is more likely to reward fortuitous or, worse, purposeful delay; unlike with most other civil litigation, a more belated award of benefits to a social security claimant will advantage the attorney who receives a contingent fee—even where the passage of time requires little or no extra legal work—while of course harming the claimant himself.[19] *See Rodriguez v. Bowen,* 865 F.2d at 746. In contrast, because the lodestar method compensates counsel for work reasonably expended on the litigation, it encourages the attorney neither to cut corners nor delay resolution of a case.[20] Stated differently, contingency fees do little to foster or reward more effective representation in social security cases. Although certain disability lawsuits may be riskier or more complex than others, generally the amount of recovery is— unlike in personal injury cases, for example—"the subject of a calculation which is rarely in question and therefore, bears no relationship to the lawyer's skill, effort, or effectiveness."[21] *In re Horenstein,* 810 F.2d 73, 75 (6th Cir.1986) (per curiam). Furthermore, as the court explains further below, rejection of a presumption in favor of the contingency figure does not mean

---

**18.** As this court has recognized in considering a fee request in a "common fund" case—another arena in which the courts of appeals disagree as to whether fees should be determined according to a lodestar or percentage method—even in those cases in which attorney's fees have ostensibly been calculated as a proportion of the fund, most courts have felt compelled to vary the figure selected, based on the size of the recovery and the actual amount of time devoted to the case by the attorney, in order to avoid awards that would, in effect, compensate the lawyer at an excessively high hourly rate. *See Bowen v. SouthTrust Bank of Alabama,* 760 F.Supp. 889, 895 (M.D.Ala.1991) (Thompson, J.).

**19.** For example, had this court or the Secretary determined in 1983, when Frazier retained Booker, that he had been entitled to disability benefits at the time he originally applied for them in 1981, Frazier would on balance be better off, for he would have begun receiving his benefits sooner and in the end received essentially the same total amount. However, had Frazier prevailed in 1983, he would have received a smaller lump-sum payment of past-due benefits and, for this reason, the fee Booker could have expected to receive would have been substantially less than either the figure he now requests or the one the court has decided to award him. This would have been true despite the fact that, given the modest number of hours he has devoted to Frazier's case, the total amount of time Booker would have had to work on the lawsuit had Frazier been judged disabled in 1983 would not, relatively speaking, have been reduced proportionately.

**20.** It also removes the prospect that a lucky few attorneys will receive an undeserved windfall should, by chance, their cases require a number of years before their clients prevail but only a relatively insignificant number of hours of legal work.

**21.** Moreover, both the riskiness and complexity of a case are criteria that can be considered under the lodestar method. *See* section II(B) of the court's order.

the attorney-client agreement is to be ignored or that the fee may not be determined with an eye toward the level of compensation necessary to attract competent counsel to this area of litigation;[22] rather, both the existence of a contingent fee contract and the economics of the relevant market for social security lawyers can be factored in as pertinent elements in the determination of a reasonable hourly rate. Nor does the lodestar approach preclude the court from compensating plaintiff's counsel for the delay *in payment* of his fee—in other words, the gap between the time he performed the legal work and the time he is paid; rather, under the lodestar approach, the court can specifically account for delay by determining an appropriate hourly fee on the basis of current market rates. *See Missouri v. Jenkins*, 491 U.S. 274, 283–84, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989); *Norman*, 836 F.2d at 1302.

### B.

The "starting point" in setting an attorney's fee under the lodestar method is to determine the lodestar figure—that is, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). *Accord Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988). The fee applicant bears the burden of "es-

tablishing entitlement and documenting the appropriate hours and hourly rates." *Id.* at 1303. After calculating the lodestar fee, the court should then proceed with an analysis of whether any portion of this fee should be adjusted upwards or downwards. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air ("Delaware Valley I")*, 478 U.S. 546, 565–66, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986); *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940.

In making the above determinations, the court is guided by the 12 factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir.1974). *See Delaware Valley I*, 478 U.S. at 564, 106 S.Ct. at 3097–98; *Norman*, 836 F.2d at 1299.[23] These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of any professional relationship with the client; and (12) awards in similar cases.

Furthermore, because the fee in this case will derive from the Frazier's past-due

---

**22.** If anything, it is the statutory 25% cap on attorney's fees in social security cases that could conceivably discourage attorneys from accepting suits involving small amounts of past-due benefits, because these lawyers would be precluded from collecting a full lodestar fee in such cases. However, this disincentive is no greater under a lodestar regime that it would be given a standard that presumed the reasonableness of a contingency fee contract. Where a claimant is awarded little in the way of retroactive benefits, an attorney whose fee is calculated on the basis of a percentage agreement will likewise collect a relatively small fee. Whatever the standard for calculating fees, the disincentive arises from the fact that fees are paid from past-due benefits, the sum of which cannot be predicted at the start of a social security lawsuit. It is always uncertain not only whether the plaintiff will prevail but also, if he does, whether he will do

so relatively quickly and thus receive a small amount of past-benefits, or whether, as in Frazier's case, he will only vindicate his rights after several years and a series of hearings and remands. Therefore, it is plausible that regardless of how fees are calculated, lawyers will accept only those social security clients whose benefit claims were filed sufficiently long before so as to guarantee that they will receive at least a significant amount of retroactive benefits if they prevail. Of course, this disincentive may to some extent be mitigated by the availability of attorney's fees directly from the Secretary, under the Equal Access to Justice Act. 28 U.S.C.A. § 2412(d).

**23.** It is presumed that most or all of the *Johnson* factors will be subsumed in the calculation of the lodestar. *Norman*, 836 F.2d at 1299; *Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9.

benefit and the Secretary, therefore, no longer possess an economic interest in the determination of the fee, the court must act, in some sense, as a fiduciary for Frazier, and must be especially careful to scrutinize every factor relevant to determining the size of a reasonable attorney's fee.

### i. Reasonable Hours

■ Attorney Booker has requested compensation for 28 litigation hours, 28.5 hours of work on administrative proceedings, and 1.5 hours spent preparing a fee petition. He has submitted itemized documentation confirming that he has devoted these amounts of time on Frazier's case. However, as an initial matter, the court again notes that under § 406(b) the only fees to which Booker is entitled are for time allocated to Frazier's lawsuit. *See Brown v. Sullivan*, 917 F.2d at 191 & n. 5. Booker must look exclusively to the Secretary in seeking compensation for representation in agency proceedings.[24] *See* 42 U.S.C.A. § 406(a). Furthermore, he may not collect attorney's fees for time spent preparing his own fee petition. *See Whitt v. Califano*, 601 F.2d 160, 161 n. 2 (4th Cir.1979).

■ Although the Secretary has objected to other aspects of the fee petition, he has not challenged the number of litigation hours claimed. However, the court has conducted an independent review of Booker's hours to determine if there is any time that should be excluded because it was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40. The court has also considered two *Johnson* factors—the novelty and difficulty of the case, and the amount involved and the result obtained—in assessing the reasonableness of the hours

claimed. The court is satisfied that all of the hours listed appear to have been necessary, and directly related, to litigating this case, and that Booker has exercised reasonable "billing judgment." *Norman*, 836 F.2d at 1301. The court therefore concludes that plaintiff's counsel is entitled to the full number of litigation hours claimed.

### ii. Prevailing Market Rate

■ "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* at 1299. Although Booker does not contend he should be paid according to an hourly rate, his $16,792.92 request for 28 litigation hours would amount to a fee of $600 per hour. The Secretary suggests that Booker instead be compensated at the more "reasonable" hourly rate of $125.

■ To determine the prevailing market rate, the court will consider the following *Johnson* factors: customary fee and awards in similar cases; skill required to perform the legal services properly; the experience, reputation, and ability of the attorney; time limitations; preclusion of other employment; undesirability of the case; and nature and length of the professional relationship with the client.

*Customary Fee and Awards in Similar Cases:* The range of hourly fees charged by attorneys in Alabama practicing in similar areas of law with approximately the same experience as Booker is $100 to $150. *See, e.g., Smith v. Bowen*, Civil Action No. 83–T–19–N (M.D.Ala. Aug. 23, 1988) (Thompson, J.) (fixing Booker's unadjusted

---

24. In communications to the court, both Booker and counsel for the Secretary have agreed that, should the court award Booker a fee smaller than the one he requests, he would be entitled to seek additional compensation from the Secretary under § 406(a), despite the fact that the court rather than the Secretary determined in this case that Frazier was entitled to benefits. Such a position is consistent with the few reported decisions that have confronted the issue of whether an award of benefits by the Secre-

tary in compliance with a court order—as opposed to an independent determination of disability by the Secretary following a court-ordered remand—satisfies the requirement in § 406(a) that the Secretary have rendered "a determination favorable to the claimant" before the claimant's attorney may obtain fees from the Secretary. *See Coup v. Heckler*, 834 F.2d 313, 321 (3rd Cir.1987); *Taylor v. Heckler*, 608 F.Supp. 1255, 1260 n. 1 (D.N.J.1985).

lodestar fee at $125 per hour); [25] *Benson v. Bowen*, Civil Action No. 84–T–1032–E (M.D.Ala. Dec. 29, 1987) (Thompson, J.) (awarding Booker a fee which, taking account of contingency, amounted to approximately $200 per hour); *Morgan v. Bowen*, Civil Action No. 85–T–158–N (M.D.Ala. Aug. 23, 1988) (Thompson, J.) (awarding unadjusted lodestar fee of $100 per hour).[26]

*Skill Required to Perform the Legal Services Properly:* While there is no evidence that this case involved unusually complex or difficult issues, this court has in previous cases recognized that the degree of skill required to provide adequate legal services in social security cases in general is fairly high. There are relatively few lawyers who routinely handle disability lawsuits, and it was necessary for Booker to be familiar with the complex statutes, regulations, and procedures peculiar to these cases.

*Experience, Reputation, and Ability of the Attorney:* Booker has been practicing law for approximately 17 years, during which time he has effectively represented hundreds of social security claimants in federal court. Booker is a specialist in this field, having lectured, conducted training, and published in the area of social security law. His hourly fee should, therefore, be at the top of any fee range for attorneys of similar legal experience.

*Time Limitations:* Where there has been "[p]riority work that delays the lawyer's other legal work," this factor requires "some premium." *Johnson*, 488 F.2d at 718. There is no evidence of such limitations in this case.

*Preclusion of Other Employment:* This factor "involves the dual consideration of

otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, 488 F.2d at 718. Frazier's case demanded little of Booker's time. This factor is therefore not applicable.

*Undesirability of the Case:* There is no evidence that social security cases are undesirable.

*Nature and Length of Relationship With Client:* Booker had no prior professional relationship with Frazier or his family.

Applying these criteria, the court is of the opinion that, for Booker, the prevailing market rate for non-contingent work performed by attorneys of similar experience in similar cases is $150 an hour.

iii. Lodestar Calculation

■ The unadjusted lodestar for an attorney consists, as stated, of the product of the attorney's compensable hours multiplied by his prevailing market fee. The lodestar for plaintiffs' counsel is: 28 hours × $150 an hour = $4,200.

iv. Adjustment

The court has considered 11 of the 12 *Johnson* factors in its analysis and determination of the reasonableness of the hours and fee rate claimed. The one criterion that the court has yet to consider is the contingent nature of Booker's fee.

In *Pennsylvania v. Delaware Valley Citizens Council for Clean Air ("Delaware Valley II")*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), the Supreme

---

**25.** The court notes that approximately three years have passed since the *Smith* case in which the court set Booker's unadjusted lodestar fee at $125. In determining that Booker is entitled to a fee of $150 an hour in this case, the court compensates him on the basis of current market rates. *See Missouri v. Jenkins*, 491 U.S. 274, 283–84, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989); *Norman*, 836 F.2d at 1302.

**26.** Moreover, this court has awarded non-contingent fees in the range of $75 to $150 an hour in civil rights cases which are somewhat analo-

gous to social security lawsuits. *See, e.g., Robinson v. Alabama State Dep't of Educ.*, 727 F.Supp. 1422 (M.D.Ala.1989) (Thompson, J.), *aff'd*, 918 F.2d 183 (11th Cir.1990) (table); *Stokes v. City of Montgomery*, 706 F.Supp. 811, 815 (M.D.Ala.1988) (Thompson, J.), *aff'd*, 891 F.2d 905 (11th Cir.1989) (table); *Hidle v. Geneva County Bd. of Educ.*, 681 F.Supp. 752, 756 (M.D.Ala.1988) (Thompson, J.); *York v. Alabama State Bd. of Educ.*, 631 F.Supp. 78, 85 (M.D.Ala.1986) (Thompson, J.).

Court significantly limited the discretion of district courts to enhance attorney's fees based on the risk of non-recovery of a fee in an action brought under a fee-shifting statute.[27] However, the concerns which motivated the Court's plurality are not implicated in this case, where the fees which are sought to be enhanced are to be paid by the client and not the defendant. Accordingly, *Delaware Valley II* guides but does not control the court's disposition of Booker's fee petition. *See Craig v. Sec'y, Dep't of Health and Human Services,* 864 F.2d at 327–28; *Coup v. Heckler,* 834 F.2d at 324–25. *See also Wells v. Bowen,* 855 F.2d at 45. In its determination of a reasonable fee, the court is free to consider more broadly "the very real prospects of failure inherent in this field of practice," such that "even the effective lawyer will not win all of his cases," and may adjust Booker's fee to "take account of [his] risk of receiving nothing for his services" and to ensure that a sufficient number of competent attorneys are induced to represent social security claimants, the bulk of whom, like Frazier, cannot afford to pay a non-contingent fee.[28] *Id.* From the standpoint of Frazier, who agreed to pay Booker 25% of his past-due benefits, "a contingency enhancement simply recognizes that [he] was willing to pay more to induce his attorney to take a case where there was a risk of nonpayment." [29] *Coup v. Heckler,* 834 F.2d at 324.

This court has previously found that the market in Alabama compensates for contingency in social security and other comparable fields of law with fees at least twice as large as those normally paid in similar non-contingent cases.[30] *See Smith v. Bowen,* Civil Action No. 83–T–19–E (M.D.Ala. Aug. 23, 1988) (Thompson, J.) (100% enhancement in social security case); *Morgan v. Bowen,* Civil Action No. 85–T–158–N (M.D.Ala. Aug. 23, 1988) (Thompson, J.) (same). *See also, e.g., Lattimore,* 868 F.2d at 439–40; *Stokes v. City of Montgomery,*

---

**27.** In her concurring opinion in *Delaware Valley II,* which is considered controlling, *see Lattimore v. Oman Construction,* 868 F.2d 437, 439 & n. 4 (11th Cir.1989) (per curiam), Justice O'Connor stated that two prerequisites must be met before an enhancement may be made on the basis of contingency. The fee applicant must first establish the degree to which the relevant market compensates for contingent fee cases as a class rather than relying on evidence as to the riskiness of the particular case, and second, must prove that without an adjustment for risk the prevailing party would have faced substantial difficulties in finding counsel in the local or relevant market. *Id.* at 733, 107 S.Ct. at 3090–91 (O'Connor, J., concurring). *Accord, Lattimore v. Oman Construction,* 868 F.2d 437, 439 & n. 4 (11th Cir.1989) (per curiam); *Stokes v. City of Montgomery,* 706 F.Supp. 811, 818 (M.D.Ala. 1988) (Thompson, J.), *aff'd,* 891 F.2d 905 (11th Cir.1989) (table). Additionally, Justice O'Connor indicated that a fee may be enhanced to a level no higher than necessary to bring it within the range that would attract competent counsel. *Delaware Valley II,* 483 U.S. at 734, 107 S.Ct. at 3091.

**28.** In *Wells v. Bowen,* the Second Circuit cited national statistics published by the Social Security Administration which indicated that social security litigants have, during each year from 1981 to 1987, enjoyed fluctuating success rates ranging from 38% to 56%. *Id.*

**29.** Of course, the exact amount of the contingency figure to which the attorney and client agreed is an important factor for the court to weigh, as it offers some evidence of the enhancement that the attorney considered necessary and the client deemed acceptable. In this case, that would be 25% of the total past-due benefits or $16,792.92. However, as the court has already concluded in its discussion of § 406(b), it need attach no presumption in favor of the privately negotiated contingent fee, but is obligated to authorize only fees which are fair and reasonable. In light of this fact, the court finds that awarding Booker a fee of $16,792.92 would be excessive. Such a fee would compensate Booker at a rate of $600 per hour. While it is possible that there could be cases where a contingency fee equivalent to this figure would be appropriate, this lawsuit does not fall within such an exceptional category. The court is of the opinion that a fee of $600 per hour is far more than is necessary to compensate Booker adequately for the risk of non-recovery of a fee in this case, to encourage well-qualified lawyers to represent social security claimants, or to do justice to the expectations of Booker and Frazier, as best as the court is able to infer them, when they entered into their contingency fee arrangement.

**30.** "The market principle in this state is that 'lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result.'" *Stokes,* 706 F.Supp. at 816–17, *quoting Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.) (en banc.), *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981).

706 F.Supp. 811, 818 (M.D.Ala.1988) (Thompson, J.), *aff'd*, 891 F.2d 905 (11th Cir.1989) (table); *Hidle v. Geneva County Bd. of Educ.*, 681 F.Supp. 752, 758 (M.D.Ala.1988) (Thompson, J.).

Accordingly, Booker's fee is enhanced as follows: $4,200 × 2 = $8,400. The court notes that the fee it has determined according to the lodestar formula amounts to slightly greater than 13% of Frazier's past-due benefits. The court also notes that it has not addressed the amount of fee, if any, to which Booker is entitled for time spent in administrative proceedings; Booker may still seek such an additional fee from the Secretary.

### III.

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That the petition for authorization of attorney's fees, filed by plaintiff Willie A. Frazier's counsel, Hon. R. Michael Booker, on April 22, 1991, be and it is hereby granted; and

(2) That Hon. R. Michael Booker be and he is hereby awarded an attorney's fee of $8,400 for his representation of plaintiff Frazier before this court, which shall be paid from the funds withheld by the defendant Secretary of Health and Human Services from plaintiff Frazier's past-due benefits.