**Lynn S. KRIG, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendants.**

**No. GCA 89–10141–MMP.**

United States District Court,
N.D. Florida,
Gainesville Division.

July 6, 1992.

N. Albert Bacharach, Jr., Gainesville, Fla., for plaintiff.

E. Bryan Wilson, Asst. U.S. Atty., Tallahassee, Fla., for defendants.

## REPORT AND RECOMMENDATION

SHERRILL, United States Magistrate Judge.

The Plaintiff has moved for an award of attorney's fees pursuant to 42 U.S.C. § 406(b)(2). Doc. 16. The Secretary's response, doc. 21, agrees that 14.10 hours is reasonable for the judicial portion of the claim, but argues that the amount claimed, $4,762.25, is unreasonable because it produces an hourly rate of $337.74.

Plaintiff contends that the amount claimed is reasonable because it is the contingent amount agreed upon by Plaintiff and her attorney. The contingency fee contract agreeing to a fee of 25% of past due-benefits is attached to the motion. Plaintiff Lynn S. Krig's affidavit has also been filed confirming this contract and re-

---

questing that in setting the fee, this court would "honor the contract I signed with Mr. Bacharach and approve his requested fee of $4,462.25." Doc. 19.

Plaintiff received $19,049.00 in past-due benefits. Plaintiff's attorney now claims 25% of that amount, $4,762.25, as his fee. This sum is now held in escrow by Defendant awaiting a disbursement order from this court.

Plaintiff relies upon *Wells v. Sullivan*, 907 F.2d 367 (2d Cir.1990) and *Venegas v. Mitchell*, 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990) for the argument that a § 406(b) attorney's fee should be calculated only by her contingency fee contract with her attorney. Neither party has briefed all of the case law on this question. Further research by the court has revealed that a significant split has developed among circuit courts of appeal and district courts in the Eleventh Circuit on this issue, and that the issue is far from settled. For this reason, this report and recommendation has been extended to discuss the relevant cases.

After review of the relevant cases it is recommended that the court continue to adhere to the lodestar method of calculating a § 406(b) fee rather than a method which gives great weight to a contingency fee contract.

I. The text of 42 U.S.C. § 406(b) and the split in the circuits.

42 U.S.C. § 406(b) provides in part: "Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court *may determine* and allow as part of its judgment a *reasonable* fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment...." (Emphasis added.)

It is significant that a § 406(b) fee award runs against the Plaintiff and is paid from her recovery. It is not the same as a fee awarded pursuant to 42 U.S.C. § 1988, Title VII, or 28 U.S.C. 2412(d), the Equal Access to Justice Act (EAJA), where the

fee is paid by the Defendant as a cost separate from the recovery. *Rodriquez v. Bowen*, 865 F.2d 739, 743 (6th Cir.1989) (en banc).

The second important aspect of § 406(b) is that it places a ceiling of 25% of past-due benefits obtained by the judgment. When this cap was enacted, Congress observed that "inordinately" large fees of one-third to one-half of the accrued benefits were occasionally being charged by attorneys for claimants. Congress also noted that "[s]ince litigation [to recover Social Security benefits] necessarily involves a considerable lapse of time, in many cases large amounts of accrued benefits, and consequently large legal fees, are payable if the claimant wins the case." S.Rep. No. 404, 89th Cong., 1st Sess. U.S.Code Cong. & Admin.News., p. 305, 2062 (1965), quoted in *Rodriquez v. Bowen*, 865 F.2d at 744. It seems clear from the quoted passage that Congress did not intend to ban contingent fee contracts by this statement, but simply intended to limit recovery under such contracts to no more than 25%. Indeed, since Congress was well-aware of the practice of contingent fee contracts when it amended § 406(b), it could have banned such contracts entirely in favor of an hourly rate system. It did not, but simply capped such contracts at 25%, implying that such contracts are to remain basically valid and enforceable. *Wells v. Sullivan*, 907 F.2d at 370.

Since the fee contract is only a transaction between Plaintiff and her attorney and Congress apparently did not intend to ban contingent fee contracts entirely, it would appear that the court's role would be simply to order disbursement to Plaintiff's attorney of the escrowed benefits as may have been agreed upon between Plaintiff and her attorney up to the 25% limitation.

But § 406(b) also provides that the court "may" "determine" a "reasonable" fee from the past-due benefits. The statute inescapably places the burden on the court of determining whether the amount to be disbursed to the attorney from past-due benefits is reasonable. And it is here that the circuits have split. While exercising

the duty to review the reasonableness of the fee, the Second, Sixth, and Seventh Circuits have ruled that the court must use the contingent fee contract as the basis of the award unless the award calculated in this manner constitutes a "windfall" to the attorney or is clearly unreasonable. *Wells v. Sullivan*, 907 F.2d 367 (2d Cir.1990); *Rodriquez v. Bowen, supra; McGuire v. Sullivan*, 873 F.2d 974, 980–83 (7th Cir. 1989). Several decisions of the Southern District of Alabama have adopted this approach. *Williams v. Sullivan*, 1991 U.S. Dist. LEXIS 16076 (M.D.Ala.1991) (report and recommendation), order adopting reported at 1991 U.S. Dist. LEXIS 16048; *Dorough v. Sullivan*, 1991 WL 442780, 1991 U.S. Dist. LEXIS 12708 (S.D.Ala.1991) (report and recommendation), order adopting reported at 1991 WL 442780, 1991 U.S. Dist. LEXIS 12732.

The Fourth, Fifth, Eighth, and Ninth Circuits have rejected this approach, using instead the lodestar method [1] and treating a contingent fee contract as only one of a number of factors to consider when determining the reasonableness of the award. *Craig v. Secretary, Department of Health and Human Services*, 864 F.2d 324 (4th Cir.1989); *Brown v. Sullivan*, 917 F.2d 189 (5th Cir.1990); *Cotter v. Bowen*, 879 F.2d 359, 362–63 (8th Cir.1989) (*dicta*) [2]; *Starr v. Bowen*, 831 F.2d 872, 873–74 (9th Cir. 1987). *Ramos Colon v. Secretary, Department of Health and Human Services*, 850 F.2d 24, 26 (1st Cir.1988) favorably stated this rule also in *dicta*.[3] Decisions of the Middle District of Alabama and of the Southern District of Alabama have adopted this approach. *Frazier v. Sullivan*, 768 F.Supp. 1511 (M.D.Ala.1991); *Ratliffe v. Sullivan*, 1991 WL 458849, 1991 U.S. Dist. LEXIS 14847 (S.D.Ala.1991) (report and recommendation), order adopting reported at 1991 WL 458849, 1991 U.S. Dist. LEXIS 14727.

The Eleventh Circuit has not addressed the question.

## II. Legal analysis.

Before turning to these cases the court should first consider *Venegas v. Mitchell*, 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990). In that case suit was filed pursuant to 42 U.S.C. § 1983. Plaintiff's attorney had a contingent fee contract with his client for 40% of the potential gross award. After the Plaintiff received a smaller attorney's fee pursuant to 42 U.S.C. § 1988, his lawyer sought to intervene to enforce an implied lien on 40% of Plaintiff's monetary recovery.[4]

Affirming the decision of the circuit court of appeals, the Court ruled that (1) Plaintiff's attorney could permissively intervene to enforce a lien, (2) § 1988 does not invalidate or forbid a contingency fee contract between a § 1983 plaintiff and his lawyer, (3) the contingent fee contract established a reasonable fee in the case, and (4) the proper procedure was for the trial court to enforce the contingent fee contract. The Court said that while it had "generally turned away from the contingent-fee model to the lodestar model of hours reasonably expended compensated at reasonable rates" in construing § 1988, "[w]e have never held that § 1988 constrains the freedom of the civil rights plaintiff to become contractually and personally bound to pay an attorney a percentage of the recovery, if any, even though such a fee is larger than the statutory fee that the defendant must pay to the plaintiff." 495 U.S. at 87, 110 S.Ct. at 1682–83. The Court further reasoned that since § 1983 plaintiffs could waive their causes of action, "there is little reason to believe that they may not assign part of their recovery to any attorney if they believe that the contingency arrangement will increase their likelihood of recovery. A contrary decision would place § 1983 plaintiffs in the pecu-

---

1. E.g., as established by *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

2. The Plaintiff had conceded that the court was not bound by the contingency fee agreement. 879 F.2d at 362.

3. Plaintiff's attorney did not seek a fee based upon the contract, but based upon an hourly rate.

4. The § 1988 fee was $117,000. Since the monetary recovery was $2,080,000, the 40% contingent fee would have been $406,000.

liar position of being more free to negotiate with their adversaries than with their own attorneys." *Id.*

*Venegas*, therefore, makes a distinction between establishment of a reasonable attorney's fee payable by a losing Defendant, and determination of a reasonable attorney's fee payable by the successful Plaintiff. That distinction has some importance for 42 U.S.C. § 406(b) fee applications since the issue here is the reasonableness of what Plaintiff, not Defendant, must pay.

In the first group of cases, *Wells v. Sullivan* followed the reasoning of *Venegas* that "to deny social security claimants the option of entering contingent fee arrangements would tend to defeat the general remedial purpose of the statute by unnecessarily restricting claimants' options in securing adequate counsel or counsel of their choice." 907 F.2d at 370. The court further reasoned that since most social security claimants are "indigent or are on low or fixed incomes and cannot afford to retain counsel at fixed hourly rates," "[i]gnoring reasonable contingent fee agreements or automatically reducing them would impair claimants' ability to secure representation." 907 F.2d at 371, citing *McGuire*, 873 F.2d at 980. Finding that "a contingency agreement is the freely negotiated expression both of a claimant's willingness to pay more than a particular hourly rate to secure effective representation, and of an attorney's willingness to take the case despite the risk of nonpayment," *Wells v. Sullivan* concluded that "we ought normally to give the same deference to these agreements as we would to any contract embodying the intent of the parties." *Id.*

*Wells v. Sullivan* further reasoned that while the lodestar method is intended to carefully scrutinize the reasonableness of the fee because it is to be paid by the losing party, "since there is no shifting of fees under § 406(b), courts need not be Solomon-like arbiters of 'reasonableness' between the opposing interest of prevailing plaintiffs and losing defendants." *Id.*, citing *McGuire*, 873 F.2d at 979. Contingency fee awards were believed to be especially suitable and reasonable in the social security context said the Second Circuit in *Wells*, finding that "[i]n the absence of a fixed-fee agreement, payment for any attorney in a social security case is inevitably uncertain, and any reasonable fee award must take account of that risk." *Id.*, 907 F.2d at 371.

Finally, *Wells v. Sullivan* noted that if contingency fee agreements were presumptively reasonable, a bright line of decision would be established with the salutary effect of relieving the courts of lodestar calculations. It noted that courts "are sometimes spending almost as much time reviewing and setting fees as they are in dealing with the merits of the benefits determination." 907 F.2d at 372, quoting *Rodriquez*, 865 F.2d at 746.

The *Rodriquez* decision was decided by the *en banc* Sixth Circuit. That court as well took up the issue to "bring a semblance of order to this chaotic battleground of inconsistency, one in which all parties are clamoring for an even, predictable approach in attorney's fee authorization." 865 F.2d at 746. The court expressed the aim of providing "clearer and therefore more efficient framework for the guidance of the respective district courts...." *Id.* *Rodriquez* then held that while contingent fee contracts are presumed to be reasonable, the presumption is rebuttable, and the trial court still is responsible to determine that the contract is reasonable in a particular case. In this endeavour the court must determine whether the contract was entered into at arm's length, whether the fee should be reduced due to improper conduct or ineffectiveness of Plaintiff's attorney, and whether the fee should be reduced to avoid a windfall to Plaintiff's attorney. *Id.*

*Rodriquez* cautioned that an award based upon the contingency fee contract could be unreasonable if Plaintiff's attorney had delayed the case unreasonably or had actually done no useful work on the case. It noted that because the fee award is a percentage of past-due benefits and past-due benefits steadily increase until judgment is entered, delay caused by Plaintiff's attorney would be an especially im-

portant factor to consider. *Rodriquez* also reasoned that a fee of 25% of past-due benefits would "obviously be inappropriate" if the "case has been submitted on boilerplate pleadings, in which no issues of material fact are present and where no legal research is apparent...." *Id.*, 865 F.2d at 747.

The third case in the first group, *McGuire v. Sullivan*, found that unlike a typical fee-shifting case, compensating the § 406(b) attorney more (an enhancement) for risk of nonpayment creates "no direct and immediate danger of unduly burdening the defendant" since the fee is not paid by the defendant. 873 F.2d at 979. *McGuire* also noted that since the contingent fee has been negotiated between claimant and her attorney, both have presumably placed a proper value on the risk of nonpayment and the court need not be as vigilant. *Id.*, 873 F.2d at 979–80. Like *Wells v. Sullivan*, *McGuire* expressed concern that "claimants who have difficult cases and who cannot afford to guarantee payment might not be able to secure representation" without contingency fee arrangements. *Id.* Finally, *McGuire* adopted the factors listed by *Rodriquez* for determining when the presumption of reasonableness of a contingency fee contract in a § 406(b) case would be rebutted.

The second group of cases has rejected the reasoning of *Wells, Rodriquez,* and *McGuire.* Although this court is not bound by new Fifth Circuit precedent, it retains a kinship with that circuit since both rely upon precedent from the former Fifth Circuit. For this reason, when reviewing the second group of cases it is perhaps most appropriate to begin with the new Fifth Circuit's decision in *Brown v. Sullivan, supra.* *Brown* concluded that a contingency fee contract is only a factor to be considered in determining a § 406(b) fee. It relied upon *Johnson v. Georgia Highway Express*, 488 F.2d 714, 718 (1974) for this reasoning. From *Johnson* it quoted the familiar principle that "[w]hether or not [the prevailing party in a Title VII case] agreed to pay a fee and in what amount is not decisive.... The criterion for the court is not what the parties agreed but what is reasonable." 917 F.2d at 192. *Brown* then held that "[b]y specifying that a *reasonable* fee should be allowed, the Act [§ 406(b)] intrudes upon the contractual relationship between the attorney and his client." *Brown v. Sullivan*, 917 F.2d at 192 (Emphasis by the court). *Accord Craig v. Secretary, Department of Health and Human Services*, 864 F.2d at 327.

The reliance *Brown* placed upon *Johnson v. Georgia Highway Express* for determining the § 406(b) question is no longer as persuasive after *Venegas.* *Venegas* held that 42 U.S.C. § 1988 did *not* intrude into the contractual relationship between a § 1983 Plaintiff and his attorney when the only consideration was an adjustment of what the Plaintiff would have to pay his or her attorney as a fee, and noted the distinction between the attorney's contractual claim against his client and considerations of reasonableness when the losing Defendant is called upon to pay the fee. *Johnson v. Georgia Highway Express* was a Title VII case, a fee-shifting statute exactly like § 1988. Thus, after *Venegas* it cannot be said that Title VII or § 1988 intrude into the contractual relationship between these Plaintiffs and their lawyers when that is the only issue.

Cases cited above from the other circuits, *Craig, Cotter,* and *Starr,* did not attempt to examine the issue in depth, but simply assumed that a contingency fee contract is not presumptively to be the basis of a § 406(b) fee award, and little can be gleaned from those cases to guide this court.

The most extensive analysis of the issue in the second group of cases is that of Chief Judge Thompson of the Middle District of Alabama in *Frazier v. Sullivan.* In *Frazier* Judge Thompson acknowledged that while Congress had not forbidden contingency fee contracts, it had left the courts with no guidance as to how to determine the reasonableness of a § 406(b) fee or the weight to be accorded such contracts. 768 F.Supp. at 1514. After noting the split in the circuits above, Judge Thompson concluded that the second group of cases had reached the correct result.

He reasoned that since the statute expressly stated that the court was to "determine" a fee, and since the statute also said the fee must be "reasonable," Congress must have intended the court to follow that mandate notwithstanding a contractual arrangement between the parties. He also noted that the 25% cap was added to the statute as a dependent clause to the requirement that the court determine a reasonable fee, and reasoned that this served the sensible purposes of preventing the depletion of Plaintiff's award where the award was small. 768 F.Supp. at 1514 and 1515 n. 14.

Judge Thompson also found that since almost always in the reported decisions the contingent fee contract is for the maximum amount of 25%, if the court were to award that full amount there would be no funds left for the Secretary to award fees for work at the administrative level pursuant to § 406(a). This would then upset the dual role of the court and the Secretary in the award of fees. 768 F.Supp. at 1515. He reasoned that Congress could not have intended that result since it had provided for such fees in § 406(a).[5]

The special vulnerability of social security claimants also played a role in Judge Thompson's decision. He determined that some claimants have mental impairments[6] and consequent diminished ability to understand the nature of a contingency fee contract or to negotiate such contracts with their attorneys, and most "desperately need the minimal past-due benefits they so long have gone without...." 768 F.Supp. at 1516. He found that the 25% cap was enacted in implicit recognition of "the special difficulties that confront social security claimants" as well as because there had been inordinately large contingency fees charged in the past by attorneys. *Id.*

Judge Thompson found that none of the courts which had adopted a rule presuming the reasonableness of contingency fee contracts had arrived at satisfactory guidelines for the exception to the rule. He found that the "windfall" exception was without objective meaning, and reasoned that the lodestar approach would give all parties concerned a more predictable standard. On the other hand, should the "windfall" concept be reserved for only unconscionable contracts, the result would be that the word "reasonable" would be read out of § 406(b). Further, he noted that the "unconscionability" doctrine was already available, and was not needed to give social security claimants special protection, an intention he believed Congress had when it enacted the cap on contingency fees. 768 F.Supp. at 1516–17.

Finally, Judge Thompson discussed the lodestar factors and held that these adequately protected all of the relevant interests in determining a reasonable fee, including contingency and attracting attorneys to do social security work. In particular he noted that the lodestar approach paid the attorney for actual work, and avoided the serious problem of the contingent fee approach that the longer the case was delayed, the greater would be the past-due benefits, and thus the greater the fee. 768 F.Supp. at 1517. He was especially concerned that if the fee were to be based upon a contingency fee, few attorneys would take social security cases involving small amounts of benefits. He was also concerned that some might not take the cases because of uncertainty as to the fee amount; the fee amount would not be known until the case was won and would be entirely dependent upon whether success took a short or long time to accomplish. 768 F.Supp. at 1518 n. 22.

Judge Thompson's opinion in *Frazier v. Sullivan* is the most persuasive of all of the cases cited above. *Wells, McGuire,* and *Rodriquez* all are premised upon the flawed assumption that social security claimants have negotiating power in establishing fee agreements with attorneys who represent them. This assumption is essential to a rule that relies so heavily upon a

---

**5.** It is a settled principle of statutory construction that several provisions of a statute are to be read so as to harmonize and give effect to all provisions.

**6.** The Plaintiff in the case was mentally retarded.

contingency fee contract as the basis for determining the reasonableness of a fee. The problem is the relative poverty and ill health of most social security claimants. While not every claimant wins his or her case in this court, most appear to be suffering from some physical problems, most have little education, and most are not working. These persons uniformly have no ability to hire an attorney. They can obtain legal representation only if the attorney is willing to take the case without payment of a fee at the outset. A contingency fee contract of some sort is inevitable under these conditions. Also, while the numbers have been few, in every case before the undersigned where a contingent fee contract has been mentioned the fee was always 25% of past-due benefits. If true arm's length bargaining were operative, one would expect variations of the percentage. Accordingly, it must be concluded that there is very little arm's length bargaining in the establishment of 25% contingency fee contracts.

Additionally, the text of § 406(b) is different from 42 U.S.C. § 1988. While *Venegas* found § 1988 not to have been intended to interfere with attorney-client fee contracts in attorney-client disputes about fee, § 406(b) is different. It provides that the court must "determine" the fee which a Plaintiff must pay her attorney from her past-due benefits, and it provides that the fee must be "reasonable." This is evidence of intent that the court exercise judgment notwithstanding a fee agreement.

Finally, a rule which normally awards the contingent fee amount is not facially reasonable for all of the reasons discussed by Judge Thompson. This is particularly true since such fees increase in direct proportion to delay of judgment in the case, not in proportion to the skill and work of the lawyer.

Consequently, it is recommended that the court reject the *Wells, McGuire,* and *Rodriquez* cases, adopting instead *Frazier v. Sullivan,* and determine a "reasonable" § 406(b) fee in this case using normal lodestar analysis.

That analysis is relatively simple in this case, and should be simple in most cases. Indeed, the calculation should be easier and less likely to spawn collateral litigation than a calculation which attempts to determine whether a contingent fee contract is unreasonable and a "windfall" in view of the work of the lawyer, the delay, and the amount of the past-due benefits. This court has recently awarded $150 per hour as the hourly rate for a § 406(b) fee. *Gray v. Sullivan,* MCA 89–50053–WS, report and recommendation, doc. 21, adopted by Chief Judge Stafford on March 14, 1991, doc. 22; *Branch v. Sullivan,* TCA 88–40295–WS, report and recommendation filed September 5, 1991, doc. 26, adopted by Chief Judge Stafford on April 2, 1992, doc. 27. That is a reasonable hourly rate.

The parties have agreed that 14.10 hours reasonably were needed to do the judicial work in this case. The lodestar, therefore, is $2,115.00.

Plaintiff in this case has provided no argument or evidence to support adjustment of the lodestar, relying entirely on the contingent fee contract. Such argument and credible evidence on the subject is necessary for enhancement of the fee. *Lattimore v. Oman Construction,* 868 F.2d 437 (11th Cir.1989); *Curry v. Contract Fabricators Incorporated Profit Sharing Plan,* 891 F.2d 842 (11th Cir.1990); *Norman v. Housing Authority of the City of Montgomery,* 836 F.2d 1292, 1302 (11th Cir.1988), quoted in *Gilmere v. City of Atlanta, Ga.,* 864 F.2d 734, 742 (11th Cir. 1989) (enhancement will be awarded only where it is shown that such enhancement is necessary to assure the availability of counsel).

Accordingly, it is

RECOMMENDED that:

1. The court ORDER that the Secretary disburse to Plaintiff's attorney $2,115.00 as a reasonable attorney's fee pursuant to 42 U.S.C. § 406(b).

2. Within 15 days after being served with a copy of this report and recommendation, a party may serve and file specific, written objections to the proposed findings and recommendations. A party may re-

spond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.